UNITED STATES of America, Plaintiff-Appellee,

v.

MOBIL OIL CORPORATION, Defendant-Appellant.

No. 71-3558.

United States Court of Appeals, Fifth Circuit.

July 26, 1972.

Rehearing Denied Sept. 12, 1972.

Richard Henderson, Victoria, Tex., David R. Latchford, Austin, Tex., Donald G. Canuteson, Dallas, Tex., Walter B. Morgan, Law Dept., Humble Oil & Refining Co., Houston, Tex., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., Kent Frizzell, Asst. Atty. Gen., Land & Natural Resources Div., Dept. of Justice, Washington, D. C., Jack Shepherd, Ellis C. McCullough, Mary L. Sinderson, Asst. U. S. Attys., Houston, Tex., Edmund B. Clark, Carl Strass, Attys., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Jack L. Brandon, Houston, Tex., amicus curiae.

Before BELL and RONEY, Circuit Judges and BREWSTER, District Judge.

BELL, Circuit Judge:

The Federal Water Pollution Control Act (WPCA), 33 U.S.C.A. § 1161(b) (4),[1] requires the "person in charge" of a vessel or an offshore or onshore facility to notify the appropriate federal agency when his vessel or facility discharges oil into surrounding water. The Act extends a measure of protection to persons who comply with this require-

---

1. 33 U.S.C.A. § 1161(b) (4):

(4) Any person in charge of a vessel or of an onshore facility or an offshore facility shall, as soon as he has knowledge of any discharge of oil from such vessel or facility in violation of paragraph (2) of this subsection, immediately notify the appropriate agency of the United States Government of such discharge. Any such person who fails to notify immediately such agency of such discharge shall, upon conviction, be fined not more than $10,000, or imprisoned for not more than one year, or both. Notification received pursuant to this paragraph or information obtained by the exploitation of such notification shall not be used against any such person in any criminal case, except a prosecution for perjury or for giving a false statement.

ment. It provides that information obtained by the government in consequence of the mandatory disclosure of oil discharges may not be used "in any criminal case" against the persons who make the disclosure. The central issue on this appeal is whether, in the defense of a prosecution under the Rivers and Harbors Appropriation Act of 1899, 33 U.S. C.A. §§ 407, 411,[2] the corporate owner of an onshore facility may avail itself of this statutory immunity. The district court held that the corporate owner may not. We disagree.

The relevant facts are not in dispute. Mobil Oil Corporation owns a plant near Vanderbilt, Texas. In May, 1970, simultaneous malfunctions in independent regulatory mechanisms caused tanks at the Vanderbilt plant to discharge approximately 150 barrels of oil into Venado Creek, a navigable waterway of the United States. It was stipulated that Mobil discovered the discharge and notified the Coast Guard through one of its employees. The Coast Guard, which had no prior knowledge of the accident, initiated an investigation. After this investigation the United States Attorney for the Southern District of Texas filed an information against Mobil. This information was based solely on facts that the government obtained by exploiting the notification given by Mobil. The information charged that Mobil had violated the federal prohibition against the discharge of refuse into navigable waters of the United States. In due course Mobil was prosecuted, convicted, and fined.

Mobil argues that the notice of the discharge into Venado Creek was given in accordance with the requirements of the WPCA and that the immunity conferred by statute extends to facts the government obtained by exploiting this notification. Because the information against Mobil was based solely on facts that were obtained in this way, the subsequent conviction, Mobil contends, was invalid.

2. 33 U.S.C.A. § 407:

It shall not be lawful to throw, discharge, or deposit, or cause, suffer, or procure to be thrown, discharged, or deposited either from or out of any ship, barge, or other floating craft of any kind, or from the shore, wharf, manufacturing establishment, or mill of any kind, any refuse matter of any kind or description whatever . . . into any navigable water of the United States, or into any tributary of any navigable water from which the same shall float or be washed into such navigable water; and it shall not be lawful to deposit, or cause, suffer, or procure to be deposited material of any kind in any place on the bank of any navigable water, or on the bank of any tributary of any navigable water, where the same shall be liable to be washed into such navigable water, either by ordinary or high tides, or by storms or floods, or otherwise, whereby navigation shall or may be impeded or obstructed: *Provided*, That nothing herein contained shall extend to, apply to, or prohibit the operations in connection with the improvement of navigable waters or construction of public works, considered necessary and proper by the United States officers supervising such improvement or public work: *And pro-* *vided further*, That the Secretary of the Army, whenever in the judgment of the Chief of Engineers anchorage and navigation will not be injured thereby, may permit the deposit of any material above mentioned in navigable waters, within limits to be defined and under conditions to be prescribed by him, provided application is made to him prior to depositing such material; and whenever any permit is so granted the conditions thereof shall be strictly complied with, and any violation thereof shall be unlawful.

33 U.S.C.A. § 411:

Every person and every corporation that shall violate, or that shall knowingly aid, abet, authorize, or instigate a violation of the provisions of sections 407, 408, and 409 of this title shall be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $2,500 nor less than $500, or by imprisonment (in the case of a natural person) for not less than thirty days nor more than one year, or by both such fine and imprisonment, in the discretion of the court, one-half of said fine to be paid to the person or persons giving information which shall lead to conviction.

The government argues that the information against Mobil, a corporate owner, was proper despite the necessary facts having been obtained through exploitation of the notice. Conceding that statutory immunity would otherwise bar the use of such facts, the government asserts that immunity does not bar their use in this case, for the Mobil Oil Corporation is not, the government contends, within the class of persons to whom the immunity extends.

The statutory language that bears upon these contentions is found in § 1161(b) (4), supra, Fn. 1, of the WPCA. That section imposes the duty of disclosure upon "[a]ny person in charge of a vessel or of an onshore facility or an offshore facility." The section further provides that the "information obtained by the exploitation of such notification shall not be used against any such person in any criminal case    ." Whether Mobil is entitled to the statutory immunity conferred depends, in turn, on whether Mobil was a "person in charge" of the Vanderbilt facility within the terms of the statute.

■    While the WPCA does not describe the character of the proprietary function signified by the phrase "in charge," it does describe the "person" to whom the provisions of § 1161 extend. Under the Act a "person" is any "individual, firm, *corporation*, association, or partnership" (emphasis supplied). 33 U.S.C.A. § 1161(a) (7). Thus the Mobil Oil Corporation is a "person" within the meaning of the WPCA. It remains to be decided whether Mobil, as owner of the Vanderbilt plant, was "in charge" of the facility at the time of the accident.

■    The answer to this question emerges from a consideration of the logic of the statute and the congressional purposes that give it form and substance. The structure of § 1161 suggests that the persons who are entitled

to immunity are the persons who are required to make disclosure in the first instance. Thus, while the narrow issue presented on this appeal concerns entitlement to the statutory immunity, that issue is to be resolved in light of the policy and the scope of the statutory obligation. By requiring that certain persons disclose information concerning oil discharges, Congress took steps to ensure the timely discovery of abatable hazards and to facilitate the implementation of measures calculated to minimize pollution damage. Absent a requirement to report, discharges of small amounts of oil such as is the case here, might well go undetected or, at least, the possibility of abatement would be lessened.[3] This policy bears heavily on question of the class of persons to whom the provisions of the statute extend— that is, the "persons in charge" of vessels and facilities.

■    The owner-operator of a vessel or a vacility has the capacity to make timely discovery of oil discharges. The owner-operator has power to direct the activities of persons who control the mechanisms causing the pollution. The owner-operator has the capacity to prevent and abate damage. Accordingly, the owner-operator of a facility governed by the WPCA, such as the Mobil facility here, must be regarded as a "person in charge" of the facility for the purposes of § 1161. A more restrictive interpretation would frustrate congressional purpose by exempting from the operation of the Act a large class of persons who are uniquely qualified to assume the burden imposed by it.

We conclude that an owner-operator is "in charge" of his facility within the meaning of § 1161. It necessarily follows that a corporate owner, a "person" within the statutory definition, is a "person in charge" of the facilities it owns and operates and is thus entitled to the statutory immunity.[4]

3. Here the discharge was partially abated through recovery of some of the oil and a clean-up effort.

4. The government has on occasion given this statute a similar construction by prosecuting corporate owner-operators for failure to report under § 1161. *See*

The government cites legislative history in support of its contention that a contrary result must be reached in this case. We view this history as inconclusive. Some of the materials asserted to be relevant in fact deal with the meaning of language which is not contained in the statute. Thus, materials which allegedly support the view that § 1161 extends only to natural persons (e. g., foremen, supervisors, individuals who are "operationally in charge" of vessels or facilities) were developed in respect of language contained in the House Bill, which spoke in terms of "individuals in charge", not "persons in charge." *See* H. Rep. No. 91–127, 91st Cong., 1st Sess. 2, 10 (1969); H. Rep. No. 91–940, 91st Cong., 2d Sess. 29 (1970), U.S.Code Cong. & Admin.News 1970, p. 2691. Of course, the latter, broader phrase, which must be read in light of the comprehensive statutory definition of "persons," was the language finally adopted by Congress. Further, to the extent that legislative history does shed light on the meaning of "persons in charge," it suggests at the very most that Congress intended the provisions of § 1161 to extend, not to every person who might have knowledge of an oil discharge (mere employees, for example), but only to persons who occupy positions of responsibility and power. *See* S. Rep. No. 91–351, 91st Cong., 1st Sess. 16 (1969); H. Rep. No. 91–940, 91st Cong., 2d Sess. 34 (1970). Nothing in the legislative history suggests that owner-operators of vessels and facilities are not members of that class.

The government contends further that for the purposes of determining the scope of the statutory immunity a corporate owner should be treated differently from an owner who is a natural person. The government maintains that this differentiation is warranted because the immunity provision of § 1161 is designed to insulate the enforcement of the statutory duty from the operation of Fifth Amendment privilege against self-incrimination. Corporations, of course, do not enjoy that privilege. George Campbell Painting Corp. v. Reid, 1968, 392 U.S. 286, 88 S.Ct. 1978, 20 L. Ed.2d 1094. For this reason the government maintains that the statutory immunity should not be held to extend to corporations.

This argument ignores a second function of the immunity provision. Immunity insulates enforcement of the statutory duty from the operation of the constitutional privilege, but it also provides a valuable incentive for disclosure in the first instance. Thus, even where the constitution would permit the prosecution of a corporate owner on the basis of information the owner was compelled to disclose, the statute provides the assurance that the owner will not be harmed by incriminating evidence which the government obtains by exploiting the mandatory notice. Thus the immunity provision encourages the owner to comply with his statutory duty. The provision is an essential feature of the statutory scheme. To preserve the provision to the full extent of its intended function, the scope of statutory immunity must be held to extend to all persons covered by § 1161, whether they enjoy the constitutional privilege or not.

Finally, we observe that nothing in this interpretation of the scope of the statutory immunity impairs the operation of substantive criminal prosecutions against the discharge of refuse into navigable waters of the United States. The Rivers and Harbors Appropriation Act of 1899 remains intact. Indeed, it is preserved by a savings clause in the WPCA. 33 U.S.C.A. § 1174. We hold only that government may not, in the prosecution of offenses defined by the Rivers and Harbors Appropriation Act, rely upon information obtained solely from the notice mandated by § 1161 or

the indictment issued by the grand jury for the Southern District of New York, United States v. B. P. Oil Corp. and Barge Terminal, Inc. unreported, (S.D. N.Y.1970), 70 Crim. 1107; United States v. Gulf Oil Corp., unreported, (W.D.Ohio, 1971), Crim. No. 11795.

from the exploitation thereof. Under the facts stipulated here, where there is no evidence against Mobil save what it disclosed or that which flowed from the disclosure, the conviction cannot stand.

Reversed and remanded for further proceedings not inconsistent herewith.