**UNITED STATES of America,**
**Plaintiff,**
**v.**
**SKIL CORPORATION, a corporation,**
**Defendant.**

**No. 72 CR 500.**

United States District Court,
N. D. Illinois, E. D.

Oct. 20, 1972.

James R. Thompson, U. S. Atty., Chicago, Ill., for plaintiff.

Eugene W. Beeler, Jr., of Winston & Strawn, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

PARSONS, District Judge.

This is a criminal action in the field of water pollution brought against a corporate defendant. I am called upon to rule on defendant Skil Corporation's Motion to Suppress Evidence. The Motion is made pursuant to Rule 2.05(c) of the Local Rules of Criminal Procedure of

this Court and pursuant to Rules 12(b) and 41(e) of the Federal Rules of Criminal Procedure.

The defendant has asked that all information in the hands of the United States Attorney be suppressed as evidence against it in any criminal proceedings growing out of the incident described in the criminal information.

Defendant states that on or about March 22, 1972 it ordered a quantity of industrial fuel oil delivered to its Elston Street facility in Chicago and that by accidental oversight on the part of certain Skil personnel, the Skil receiving tank was permitted to overflow. A portion of the fuel oil flowed into a sanitary-storm sewer adjacent to the Skil plant and from there escaped into the north branch of the Chicago River.

Thereafter, defendant submits, its plant engineer notified various Government agencies, including the Coast Guard. Skil asserts that the Coast Guard initiated an investigation and reported its findings to the United States Attorney. These findings, says Skil, constitute the basis for the Government's action against it.

The Government disputes defendant's version of the acts of the case and alleges that on the date in question an instructor at North Park College advised the Metropolitan Sanitary District of Greater Chicago of an oil slick covering the entire width of the North Branch of the Chicago River and extending downstream for a distance of at least one mile. The Government submits that pursuant to this notification the Chicago Sanitary District dispatched its investigators to the situs of the spill, and that they directed a Skil employee to contact his superior, the plant engineer, and arrange a joint meeting to discuss proper cleanup procedures.

The Government further submits that it was at the suggestion of a Sanitary District employee that the plant engineer for Skil notified the Coast Guard and that neither the "notice" of the spill provided the Coast Guard by the plant

engineer nor any fruits thereof are in any way being used or exploited by the Government in the development of or presentation of the facts.

In explanation of the above, the Government states that the location of the Skil facility is not within a designated area of Coast Guard supervision and therefore no investigation was, in fact, conducted by the Coast Guard into the matter. The Government denies possession of any investigative reports or other "findings" by the Coast Guard concerning this case.

The Government further states that none of the evidence upon which its case is based was obtained by the exploitation of the plant engineer's notification. Instead, the Government alleges, its case is based entirely upon the investigation completed by the Sanitary District and that regardless of the merits of Skil's argument for suppression, the absence of anything to suppress renders Skil's contention innocuous.

Skil is charged with the violation of The Rivers and Harbors Act of 1899, 33 U.S.C.A. § 401 f.f. and specifically Section 13 thereof, which states in relevant part:

"It shall not be lawful to throw, discharge, or deposit, or cause, suffer, or procure to be thrown, discharged, or deposited either from or out of any ship, barge, or other floating craft of any kind, or from the shore, wharf, manufacturing establishment, or mill of any kind, any refuse matter of any kind or description whatever other than that flowing from streets and sewers and passing therefrom in a liquid state, into any navigable water of the United States . . . ." 33 U.S.C.A. § 407.

The penalty for violating this provision is contained in Section 16 of the Act, which states:

"Every person and every corporation that shall violate, or that shall knowingly aid, abet, authorize, or instigate a violation of the provisions of sections 407, 408, and 409 of this title

shall be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $2,500 nor less than $500, or by imprisonment (in the case of a natural person) for not less than thirty days nor more than one year, or by both such fine and imprisonment, . . ." 33 U.S.C.A. § 411.

The Water Pollution Control Act, recently passed in 1970, 33 U.S.C.A. § 1151 f.f. expands the earlier Federal statutory control over pollution matters, and contains a notice requirement pertaining to the discharge of oil into navigable waterways. It provides that:

"Any person in charge of a vessel or of an onshore facility or an offshore facility shall, as soon as he has knowledge of any discharge of oil from such vessel or facility in violation of paragraph (2) of this subsection, immediately notify the appropriate agency of the United States Government of such discharge. Any such person who fails to notify immediately such agency of such discharge shall, upon conviction, be fined not more than $10,000 or imprisoned for not more than one year, or both. Notification received pursuant to this paragraph or information obtained by the exploitation of such notification shall not be used against any such person in any criminal case, except a prosecution for perjury or for giving a false statement." 33 U.S.C.A. § 1161(b)(4).

Pursuant to Executive Order No. 11548, July 20, 1970, 35 F.R. 11677 the "appropriate agency" of the Federal Government to receive this notice is the Coast Guard.

The Water Pollution Control Act provides immunity from prosecution for all "persons" who comply with the notice requirement.

"Notification received pursuant to this paragraph or information obtained by the exploitation of such notification shall not be used against any such person in any criminal case,

except a prosecution for perjury or for giving a false statement." 33 U.S.C.A. § 1161(b)(4).

Skil maintains that it is a "person" within the meaning of § 1161(a)(7) which defines "persons" to include an individual, firm, corporation, association, or partnership, and that therefore any information obtained as a result of the notice given by its plant engineer may not be used against it in this case.

In support of this contention Skil submits the case of United States v. Mobil Oil Corporation, 464 F.2d 1124, 4 ERC 1405 (5th Cir. July 26, 1972). That case concerned itself with the accidental discharge of oil in violation of the aged Rivers and Harbors Act of 1899 by defendant Mobil Oil. Mobil had given notice pursuant to the newer Act, 33 U.S.C.A. § 1161(b)(4). The Fifth Circuit Court of Appeals reversed Mobil's conviction in the District Court and held that Mobil was a "person" entitled to immunity under the new Water Pollution Control Act.

I have concluded as a result of my examination of the *Mobil* case that the position of the Court of Appeals for the Fifth Circuit supports, in part, the position of Skil Corporation in its Motion before me.

However, in reviewing the Congressional history of the new Statute 33 U.S.C.A. § 1161 as well as that of the older Statute 33 U.S.C.A. § 401, I have come to the conclusion that I must interpret § 1161 in this case in a different manner than it was interpreted by the Mobil Oil Company case.

It is of passing interest to observe that here the Government argues that there was no Congressional intent to provide a twofold incentive to any person for complying with the notice requirement of the new Act. Skil takes the opposite point of view. I am not profoundly impressed with the suggestion that it is incongruous to find that Congress considered it necessary to provide a double incentive by the granting

of immunity in § 1161(b)(4) in addition to posing the threat of prosecution, thereby inspiring a "person in charge" to more promptly notify authorities of any discharge.

That argument assumes that Congress could not decide, as very often it has, that the threat of prosecution does, in reality, constitute an incentive to cause one voluntarily to perform a desired act. Experience has shown that the threat of prosecution can create some additional incentive to the private individual to voluntarily perform in aid of the "governmental responsibilities."

Before the enactment of what is now § 1161 the governing Statutes 33 U.S.C. A. § 401 f.f. which still exist, penalized "any person" for causing pollution in the streams.

▇ That person could be, as case law has interpreted, a corporation. Statutes have indicated that it may be a corporation, a partnership, an association, or any private person, employee or non-employee of a corporation that might be involved. The Statute merely said that "any person" causing the pollution "shall be punished."

The penalty provisions under § 407 of the old Statute, applicable as they are to *anyone*, have a maximum fine of $2,500 and a maximum incarceration of not more than one year.

§ 1161 of the new enactment is concerned primarily with the person in charge and while the incarceration provision remains one year the fine is increased to $10,000.

In the recent enactment, the penal provision carries in it the inducement clause which is to the effect that the person in charge will not be subject to prosecution if he notifies the proper authorities. Clearly § 1161 sought to bring onto the side of Government, even as against his own employer, if the case be as is this, the man (or woman) most likely to be closest to or earliest at the situs of the polluting incident.

▇ I conclude that it was the intent of Congress to provide immunity in the inducement clause, for an individual whether he be a corporate officer, a corporate supervisor, a person in a supervisory capacity or, for that matter, a non-supervising janitor or night guard at the off-shore facility. Such person need not be acting on behalf of the corporation, but on his own personal behalf.

Since that person were he responsible for the spillage could be prosecuted under § 407 it follows that in enacting § 1161 Congress sought to make available to that one individual an opportunity to alert the designated agency of a spillage at the earliest possible hour.

At the same time, § 1161 gives that person the incentive that in so doing he may not be subject to prosecution as he very well might be under § 407. It was not the intent of Congress to create a shield behind which the corporation might insulate itself from prosecution by claiming that the person in charge, whoever he may be, has reported the situation on behalf of the corporation.

It may be important that in the *Mobil Oil* case the relevant facts were not in dispute, whereas in the case at bar pertinent facts are yet to be determined.

There is an affidavit signed by the plant engineer stating that he arrived at the Elston Street facility within one-half hour after he was informed that oil might have been accidentally discharged.

The report was transmitted to the plant engineer doubtless by the "person in charge" who did not call the Coast Guard; instead the "person in charge" left that task to the plant engineer.

At the same time, there is some evidence that an instructor at North Park College reported the oil slick to the Sanitary District which in turn reported it to the Coast Guard.

But it seems to me that resolution of these facts would be necessary to a determination of a motion to suppress if the defendant were the "person in charge." Here the plant engineer is not the defendant.

▇ The fundamental question herein involved is whether or not it was the in-

tent of Congress by use of the phrase "person in charge" to mean anyone else but the person who was at the facility at the time and was in charge under the management provisions or of the handling of that part of the facility which related to the oil spillage.

Concluding, as I do, that Congress did not intend the phrase "person in charge" to carry with it the traditional concepts of corporate action (or immunity) through one of its officers or supervising personnel, I find the motion of Skil Corporation to be without merit and should be denied. The motion to suppress is denied and the cause will be set down to a firm date for trial.