UNITED STATES of America, Plaintiff,

v.

GENERAL AMERICAN TRANSPORTA-TION CORPORATION, Defendant.

Crim. No. 451–72.

United States District Court, D. New Jersey.

Oct. 31, 1973.

Herbert J. Stern, U. S. Atty., by Z. Lance Samay, Asst. U. S. Atty., for plaintiff.

Irwin & Post, Newark, N. J., by Charles J. Irwin, Westfield, N. J., for defendant.

## OPINION AND ORDER

COOLAHAN, District Judge:

Defendant is the corporate owner and operator of a tank storage farm, front-

ing on the Arthur Kill Waterway at Carteret, New Jersey. The Government has brought an Information against defendant alleging in eight counts violations of the Federal Refuse Act of 1899, 33 U.S.C. § 407.[1] Defendant is charged with allowing, between September 24, 1970 and December 6, 1971, various chemical and petroleum products to enter the waterway from defendant's facility. Under Rule 12(b)(2) of the Federal Rules of Criminal Procedure, defendant moves to dismiss seven counts[2] of the indictment on the ground that the pollution was reported to the Government by the defendant pursuant to defendant's obligations under 33 U.S.C. § 1161(b)(4),[3] which provides:

> Any person in charge of a vessel or of an onshore facility . . . shall, as soon as he has knowledge of any discharge of oil from such vessel or facility or an offshore facility immediately notify the appropriate agency of the United States Government of such discharge. Any such person who fails to notify immediately such agency of such discharge shall, upon conviction, be fined not more than $10,000, or imprisoned for not more than one year, or both. Notification received pursuant to this paragraph or information obtained by the exploitation of such notification shall not be used against any such person in any criminal case, ex-

cept a prosecution for perjury or for giving a false statement.

It is the immunity granted by the last sentence of section 1161(b)(4) on which defendant bases its motion. Since the issue of immunity is here tied with the manner, promptness, and completeness of the self-report, some discussion[4] of the facts, as shown by the record, is necessary.

The first count of the Information charges defendant, on or about September 24, 1970, with discharging and depositing refuse matter, including gasoline and acid, into the Arthur Kill. James Fish, employee of defendant and Chief Operations and Executive Officer responsible for the Carteret terminal, states in an affidavit filed with the Court that defendant "immediately upon learning of the discharge" telephoned the Coast Guard Station at Governor's Island, New York "in accordance with the requirements of the Water Pollution Control Act."[5] Fish further states that a Coast Guard investigator arrived at the terminal subsequent to the notification, and observed the discharge and action taken to correct it. Included in the record is a copy of a letter from R. J. Hanson, Chief of the Intelligence and Law Enforcement Branch of the Coast Guard District, to J. R. Scanlin, President of defendant, confirming that the Coast Guard had been notified of the

---

[1]. 33 U.S.C. § 407 provides: "It shall not be lawful to throw, discharge, or deposit . . . from the shore, wharf, manufacturing establishment, or mill of any kind any refuse matter of any kind or description whatever other than that flowing from streets and sewers and passing therefrom in a liquid state, into any navigable waters of the United States, or into any tributary of any navigable water from which the same shall float or be washed into such navigable water; and it shall not be lawful to deposit, or cause, suffer, or procure to be deposited material of any kind in any place on the bank of any navigable water, or on the bank of any tributary of any navigable water, where the same shall be liable to be washed into such navigable water, either by ordinary or high tides, or by storms or floods, or otherwise, whereby navigation shall or may be impeded or obstructed . . . ."

Defendant does not contest the status of the Arthur Kill as a waterway under the scope of this section.

[2]. The grounds on which count 2 of the Information is challenged are different from the other counts and will be discussed later.

[3]. Superseded by an identical section, 33 U.S.C. § 1321(b)(5), since the occurrence of the alleged pollution here and the filing of this Information.

[4]. The facts described herein are set out for purposes of this motion only and do not constitute final rulings of fact by this Court.

[5]. Under Exec. Order No. 11548, July 20, 1970, 35 F.R. 11677, the appropriate agency to receive notice of pollution is the United States Coast Guard.

spill on September 24, 1970. An attached Government report clearly shows that the "person reporting pollution" was "GATX [defendant] personnel Carteret, N. J."

Counts 3 through 7 charge that defendant, on or about December 2, 1971, polluted the Arthur Kill with certain products discharged from Tank Lines 73, 164, 67, 88, and 37 at defendant's Carteret facility. According to the affidavit of Mr. Fish there had been, on November 24, 1971, a considerable oil and fuel spill from a cracked "pump house" at the facility. Fish immediately notified the Coast Guard and arranged a meeting on the problem with Captain Kessler, Port Captain, United States Coast Guard, for December 2, 1971. While the meeting of December 2 was in progress, Government investigators were surveying defendant's facility and observed pollution in progress, resulting in counts 3–7 of the indictment. Defendant claims that the December 2 investigation was made only as a result of its November 24 disclosure. The Government report of the December 2 pollution does not show who was the "person reporting pollution," though the Government does not contest the fact that defendant made a report on November 24.

Count 8 charges defendant with polluting the Arthur Kill with refuse matter, including naptha solvent, on or about December 6, 1971. Mr. Fish states in his affidavit, and the Coast Guard report shows, that the Government investigator was informed of the pollution by a "dock man" employed by defendant while the investigator was at a different area of the facility than that at which the pollution was occurring.

■ Assuming, *arguendo*, that defendant's report was proper in all respects, the Government argues that defendant is ineligible for immunity under

section 1161(b)(4) since defendant is not a "person in charge" under the section. The Government would have this Court decide that section 1161(b)(4) immunity extends only to natural persons and not to corporations.[6]

■ A reading of the face language of the statute leads to the conclusion that corporations were meant to be included in the term "person in charge." Subsection (a) of section 1161 [7] defines "person" as including "an individual, firm, corporation, association, and a partnership." Strong arguments would be needed to establish the proposition that a "person in charge" does not include all "persons" as defined in the very same section. Further, the one Circuit Court which has decided the issue, United States v. Mobil Oil Corp., 464 F. 2d 1124 (5th Cir. 1972), and the one District Court sitting in this Circuit which has decided the issue, United States v. United States Steel, 4 E.R.C. 1641 (W.D.Pa.1972), have both clearly held that "person in charge" includes corporations.

The Government bases its argument on a District Court opinion outside of this Circuit, United States v. Skil Corp., 351 F.Supp. 295 (N.D.Ill.1972), as well as the legislative history of section 1161. The decision in *Skil* was based on the analysis of the court that the purposes of the Water Pollution Control Act would be best served if corporations remained liable to prosecution regardless of self-reports while their managers at the scene (person in charge) would be encouraged, through the statute, in effect to "turn in" their employer corporation because the immunity would work for the managers. The court stated:

It was not the intent of Congress to create a shield behind which the corporation might insulate itself from prosecution by claiming that the per-

---

6. The law is clear that corporations do not enjoy privilege against self-incrimination under the Fifth Amendment, George Campbell Painting Corp. v. Reid, 392 U.S. 286, 88 S. Ct. 1978, 20 L.Ed.2d 1094 (1968).

7. Superseded by an identical provision, 33 U. S.C. § 1321(a)(7).

son in charge, whoever he may be, has reported the situation on behalf of the corporation.[8]

The court in *Skil* did not go beyond a discussion of its view of the most expeditious way to implement the aims of the Act.

The Government goes further, by citing the Conference report in Congress on the Act, which declares at one point that "[the] term 'person in charge' is deliberately designed to cover only supervisory personnel who have the responsibility for the particular vessel or facility and not to include other employees."[9] This passage, however, begs the question since the report does not appear to address itself on whether a corporation can be a "person in charge." The passage is helpful only to show to whom among natural persons at a pollution site section 1161(b)(4) has application.[10] Equally unpersuasive is Government's argument that the ineligibility of corporations for immunity is demonstrated in that section 1161(b)(4) provides for imprisonment "without mention of a corporate exception such as appears in the penalty section of the Refuse Act, 33 U.S.C. § 411, which limits its imprisonment provision with the qualifactory language 'in the case of a natural person'." It cannot be assumed that Congress, in writing the 1970 Water Pollution Control Act, had focused its attention on the language within parentheses in the 1899 Act—"imprisonment (in the case of a natural person)."

Surely, the words "corporation" and "imprisonment" are logically incongruous. This Court thus concludes, with the court in *Mobil Oil*, that the legislative history here is "inconclusive."[11]

This Court holds that the argument in favor of immunity here, strongly established by the language of the statute itself, is buttressed by an overview of section 1161 as an entirety. Clearly, Congress contemplated two devices by which it was felt the Nation's waterways would become cleaner. The first was to punish those who pollute and thus create a deterrence to future polluters. The second, no less important, was to devise a system wherein an incidence of pollution would be detected at the earliest possible moment so that action could be taken to minimize damage. Subsection 1161(c)[12] embodies this second policy. By that subsection the President is mandated to publish a "National Contingency Plan" for removal of oil. Under the plan contemplated by Congress, the President is to establish "a system of surveillance and notice designed to insure earliest possible notice of discharges of oil to the appropriate Federal agency"[13] and to provide for "procedures and techniques to be employed in identifying, containing, dispersing, and removing oil . . . ."[14] Given the importance attached to the practical problem of finding and combatting such pollution as may occur, this Court sees section 1161(b)(4) with its incentives to self-report to be an important compo-

---

8. 351 F.Supp. at 298.

9. The Government's brief only gives the quotation from the report of the Senate conferees at H.R.Rep.No.940, 91st Cong., 2d Sess. 34 (1970), and not a parallel quotation from the report of the House conferees found at p. 29. At the House conferees' report, the language used is "individual" in charge, and not "person in charge." Thus it is possible that the idea that only a natural person could have immunity derived from an early concept of "individual in charge" in the legislative process and was abandoned for a broader concept of "person in charge." The different language used by each branch makes resolution of this problem possible only through conjecture.

10. This construction applies equally to the remarks of Congressman Cramer in respect to section 1161(b)(4), cited in Government's rebuttal brief at 3 and 4 and found at 91 Cong.Rec. 9327–28 (91 Cong. 2d Sess.).

11. 464 F.2d at 1128.

12. Superseded by an identical section at 33 U.S.C. § 1321(c).

13. 33 U.S.C. § 1161(c)(2)(D), superseded by identical section 1321(c)(2)(D).

14. 33 U.S.C. § 1161(c)(2)(F), superseded by identical provision at § 1321(c)(2)(F).

nent of the congressional plan. Any advantage which a corporation might receive from the immunity provision, as was feared by the court in *Skil*, is more than offset by the possible benefits to the community attendant to early knowledge of the pollution.

The Government next contends that even if corporations are entitled to section 1161(b)(4) immunity, the defendant does not qualify for such immunity here because it has not been shown that the particular individual who reported the pollution for defendant was James Fish, who stated in his affidavit that he was in effect the top person at the facility. Further, it nowhere appears that Mr. Fish himself authorized the report on the pollution. The Government is concerned, particularly in view of Government Regulations discouraging reports of *de minimis* oil discharges,[15] that reports on pollution under section 1161(b)(4) be made by persons of major responsibility. The Government cites testimony before Congress which expresses fear of putting lower level employees in the position of deciding whether to report their company for pollution.

The Government's argument loses strength in the wake of this Court's holding that the defendant corporation was the "person in charge" making the report here. Under universal concepts of the law of agency, a person who has actual or apparent authority to perform an act may legally act for a principal. Gizzi v. Texaco, Inc., 437 F.2d 308, 309–310 (3d Cir. 1971), cert. denied, 404 U. S. 829, 92 S.Ct. 65, 30 L.Ed.2d 57 (1971); Demarco v. Edens, 390 F.2d 836, 844 (2d Cir. 1968); Lind v. Schenley Industries, Inc., 278 F.2d 79, 85 (3d Cir. 1960), cert. denied, 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960); Napolitano v. Eastern Motor Express, 246 F.2d 249, 252 (3d Cir. 1957). Thus, presumably, any of a number of personnel could

have effectively reported on behalf of defendant.

This Court is aware that the law places the burden of proof of an agent's actual or apparent authority to bind a principal on the party asserting the authority. Frank Sullivan Co. v. Midwest Sheet Metal Works, 335 F.2d 33, 40 (8th Cir. 1964); Burke v. Mesta Machine Co., 79 F.Supp. 588, 615 (W.D.Pa.1948). Under this law a burden would rest on defendant to show that the individual reporting here had authority to report. But this is not a case in which defendant asserts that its agent created a contract or discharged a business duty. All that is alleged is that the Government received due notice of the pollution. The giving of notice here does not appear to be an act which a reasonable recipient of the notice would believe required high corporate position. Further, the law is well established that a person " . . . with whom an agent deals can reasonably believe that the agent has power to bind his principal if the principal *knowingly permits* the agent to exercise such power." Continental-Writ Electronics Corp. v. Sprague Electric Co., 329 F.Supp. 959 (E.D.Pa. 1971)[16] (emphasis supplied).

Thus, the burden on defendant here should not be a heavy one, especially since the Government does not contest the fact that it had notice and the affidavit of Mr. Fish implies that the giving of notice was official company policy. Still, the Federal Regulations and legislative history expressing Government concern with possible reports of *de minimis* pollution are strong enough to require that defendant show that the specific reports here were made by, under the direction, or with consent in each specific instance of an individual who could reasonably be said to be "in charge"—though not necessarily in sole charge or the highest ranking individual

15. 40 C.F.R. 110.3.

16. Though, if viewed narrowly, this case is an interpretation of Pennsylvania law, it expresses broad principles applicable here.

—at the site.[17] Such a showing may be made through further affidavits, and this Court will give both parties an opportunity for a hearing on this issue prior to trial.

■ Assuming that this Court does find defendant to be entitled to immunity on the information it supplied to the Government, the Court cannot at this stage order a dismissal of the Information on the seven questioned counts.[18] The court in United States v. United States Steel, *supra*, wisely, in view of the endorsement of "use" immunity in Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), held that section 1161(b)(4) immunity is "use" immunity only. To allow such immunity to be "transactional" in scope would dangerously jeopardize the objective of the Water Pollution Control Act to set up a deterrent against prospective polluters. Since the immunity here has the scope of "use" immunity only, the path is open to the Government to show that its evidence was obtained independently of the defendant's disclosures.

■ Defendant would have this Court hold a separate hearing on the issue whether the Government's evidence is sufficiently independent of defendant's reports so as not to run afoul of the statutory immunity. The Government contests the request for a hearing on the basis that a hearing would "require disclosure of the Government's theory of the case as well as the pretrial presentation of its evidence." The Government avers that the question could be decided during the course of the trial.

This Court finds the Government's contention to be the more sound. It would be most expeditious for the Court to be offered evidence on this issue in the course of the trial. United States v. Knox, 396 U.S. 77, 83 n. 7, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969), held that the issue whether a criminal defendant had filed a false statement with the Government unwillingly or because of duress would be most appropriately determined under Rule 12(b)(1) of the Federal Rules of Criminal Procedure[19] at the trial. The same logic governs this case. The burden remains with the Government to show that its evidence is free of the immunity. Murphy v. Waterfront Comm'n, 378 U.S. 52, 79 n. 18, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), reaffirmed in Kastigar v. United States, *supra* at 460 of 406 U.S., 92 S.Ct. 1653. The defendant is hereby given leave to reopen its motion to dismiss the seven counts when the Government's case is concluded. See United States v. Dooling, 406 F.2d 192, 197 (2d Cir. 1969).

■ Defendant, lastly, moves this Court to dismiss count 2 of the indictment, charging defendant with oil and alkaline waste pollution of the Arthur Kill on or about September 15, 1971. Defendant alleges, citing the Coast Guard Report on the pollution involved in count 2, that the pollution was deposited only on the bank of the waterway, and that under 33 U.S.C. § 407, such pollution can be made the subject of a prosecution only if it has a direct impediment on commerce. The relevant part of section 407 provides:

. . . it shall not be lawful to deposit, or cause, suffer, or procure to be deposited material of any kind in any place on the bank of any navigable water, or on the bank of any tributary of any navigable water, where

---

17. Also see discussion in the *Mobil Oil* case, *supra*, at 1128 of 464 F.2d.

18. This opinion is limited to reports of spill from on-shore sites. It is possible that the independent nature and responsibilities of command on a vessel draw special attention to the individual in command so that his employer should not benefit through immunity from his report of pollution; neither may the report be deemed effective unless made or authorized by the person in command of the vessel.

19. Rule 12(b)(1) provides: "Any defense or objection which is capable of determination without the trial of the general issue may be raised before trial by motion."

the same shall be liable to be washed into such navigable water, either by ordinary or high tides, or by storms or floods, or otherwise, *whereby navigation shall or may be impeded or obstructed.* [Emphasis supplied.]

Defendant rightly points out that the pollution covered by count 2 is not of such a nature as to "impede" or "obstruct" commerce in that it does not hinder vessels from using the waterway.

The United States argues that defendant's reliance on the bald language of the Coast Guard report is not sufficient to be grounds for a dismissal of count 2. The Government avers to have further facts which show that the pollution flowed into a "temporarily uncovered stream bed of the Arthur Kill during low tide" and that the location of this discharge is below the mean high water line and, therefore, in contemplation of law . . . is at all times part of the navigable waters of the United States." This Court has analyzed the cases cited for the latter proposition by the Government and has found them to support the Government's theory. United States v. Rands, 389 U.S. 121, 123, 88 S.Ct. 265, 19 L.Ed.2d 329 (1967); United States v. Chicago, Milwaukee, St. Paul and Pacific R.R. Co., 312 U.S. 592, 597, 61 S.Ct. 772, 85 L.Ed. 1064 (1941); Economy Light Co. v. United States, 256 U.S. 113, 118, 41 S.Ct. 409, 65 L.Ed. 847 (1921). Inasmuch as the Government in count 2 alleges discharges and deposits *"into* the Arthur Kill," this Court holds that count 2 is not defeated by the cited language of section 407 and defendant's motion with respect to count 2 is denied, with leave to reopen the motion upon Government's case.

Ordered: Defendant's motion for dismissal of each count of the Information is denied with leave to defendant to renew its motion at trial.

Ordered: There shall be a hearing on the status and instructions within defendant corporation of those reporting to the Government.