UNITED STATES of America, Appellee,

v.

David James CARR,
Defendant–Appellant.

No. 1163, Docket 89–1009.

United States Court of Appeals,
Second Circuit.

Argued May 9, 1989.

Decided July 25, 1989.

Jonathan B. Fellows (George H. Lowe, Bond, Schoeneck & King, Syracuse, N.Y., of counsel), for defendant-appellant.

J. Carol Williams, Attorney, Dept. of Justice, Washington, D.C. (Donald A. Carr, Acting Asst. Atty. Gen., Washington, D.C., Frederick J. Scullin, Jr., U.S. Atty. for the N.D.N.Y., Craig A. Benedict, Asst. U.S. Atty., David C. Shilton, Maria A. Iizuka, Attorneys, Dept. of Justice, Washington, D.C., of counsel), for appellee.

Before KEARSE, CARDAMONE, and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

Appellant David James Carr appeals from a judgment of the United States District Court for the Northern District of New York (Munson, J.), convicting him under section 103 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9603 (1982 & Supp. IV 1986). Under section 103, it is a crime for any person "in charge of a facility" from which a prohibited amount of hazardous substance is released to fail to report such a release to the appropriate federal agency. Appellant, a supervisor of maintenance at Fort Drum, New York, directed a work crew to dispose of waste cans of paint in an improper manner, and failed to report the release of the

hazardous substances—the paint—to the appropriate federal agency. At appellant's trial, the district court instructed the jury that appellant could be found to have been "in charge" of the facility so long as he had any supervisory control over the facility.

Appellant contends on appeal that this instruction was erroneous because (1) it extended the statutory reporting requirement to a relatively low-level employee, and (2) it allowed the jury to find that appellant was "in charge" so long as he exercised *any* control over the dumping. For the reasons stated below, we hold that the statutory reporting requirements were properly applied to appellant. We also hold that the jury instruction challenged on appeal, viewed as a whole, was not erroneous.

## BACKGROUND

Appellant was a civilian employee at Fort Drum, an Army camp located in Watertown, New York. As a civilian employee at a military installation, he was supervised by Army officers. His position was that of maintenance foreman on the Fort's firing range, and as part of his duties he assigned other civilian workers to various chores on the range. In May 1986, he directed several workers to dispose of old cans of waste paint in a small, man-made pit on the range; at that time, the pit had filled with water, creating a pond. On Carr's instructions, the workers filled a truck with a load of cans and drove to the pit. They backed the truck up to the water, and then began tossing cans of paint into the pond. After the workers had thrown in fifty or so cans, however, they saw that paint was leaking from the cans into the water, so they decided instead to stack the remaining cans of paint against a nearby target shed. At the end of the day, the workers told Carr of the cans leaking into the pond, and warned him that they thought that dumping the cans into the pond was illegal. Two truckloads of paint cans remained to be moved the next day, so Carr told the workers to place those cans alongside the target shed.

Approximately two weeks later, Carr directed one of the workers to cover up the paint cans in the pond by using a tractor to dump earth into the pit. Another worker, however, subsequently triggered an investigation by reporting the disposal of the cans to his brother-in-law, a special agent with the Department of Defense. A 43–count indictment was returned against appellant, charging him with various violations of federal environmental laws. The indictment included charges under the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6928(d)(2)(A), 18 U.S.C. § 2 (Counts 1–4), the CERCLA charges here at issue (Counts 5–6), and multiple charges under the Clean Water Act of 1977, 33 U.S.C. §§ 1311(a), 1319(c)(1), 18 U.S.C. § 2 (Counts 7–43). Appellant pleaded not guilty, and a 6–day trial before a jury began on October 3, 1988.

After the government had presented its evidence, it filed with the court various proposed jury instructions, including one regarding the definition of the term "in charge." Over appellant's objection, the district court gave the government's proposed instruction to the jury, essentially unchanged, as follows:

There has been testimony that the waste paint was released from a truck assigned to the workers by the Defendant David Carr. The truck, individually, and the area of the disposal constitute facilities within the meaning of [CERCLA]. So long as the Defendant had supervisory control or was otherwise in charge of the truck or the area in question, he is responsible under this law. The Defendant is not, however, required to be the sole person in charge of the area or the vehicle. If you find that he had any authority over either the vehicle or the area, this is sufficient, regardless of whether others also exercised control.

The jury acquitted appellant of all charges except Counts 5 and 6, the CERCLA charges. The district court imposed a suspended sentence of one year's imprisonment, and sentenced appellant to one year of probation. This appeal followed.

## DISCUSSION

I. *The Meaning of "In Charge" Under Section 103*

■ Appellant raises two claims on this appeal, both of which arise out of the dis-

trict court's instruction quoted above. The first claim turns on the meaning of the statutory term "in charge." Under section 103, only those who are "in charge" of a facility must report a hazardous release. There is, however, no definition of the term "in charge" within CERCLA. Appellant argues that the district court's instruction was erroneous because Congress never intended to extend the statute's reporting requirement to those, like Carr, who are relatively low in an organization's chain of command.

Our analysis of appellant's claim requires a review of the statute and its legislative history. The language of the statute itself sheds little light on the meaning of the term "in charge." Section 103 of CERCLA states only that:

> Any person in charge of a vessel or an offshore or an onshore facility shall, as soon as he has knowledge of any release (other than a federally permitted release) of a hazardous substance from such vessel or facility in quantities equal to or greater than those determined pursuant to [42 U.S.C. 9602], immediately notify the National Response Center established under the Clean Water Act [33 U.S.C. 1251 et seq.] of such release. The National Response Center shall convey the notification expeditiously to all appropriate Government agencies, including the Governor of any affected State.

42 U.S.C. § 9603(a) (1982).[1] The regulations implementing the statute fail to define the term "in charge." *See* 40 C.F.R. § .302 (1988) (EPA regulations). Since its meaning is unclear, we turn to the legislative history in an effort to determine the scope Congress intended the term "in charge" to have. *See Blum v. Stenson,*

465 U.S. 886, 896, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984).

When CERCLA was enacted in late 1980, Congress sought to address the problem of hazardous pollution by creating a comprehensive and uniform system of notification, emergency governmental response, enforcement, and liability. *See generally Congress Clears "Superfund" Legislation,* 36 Congressional Quarterly Almanac 584–93 (1980) (history of the legislation). The reporting requirements established by section 103 were an important part of that effort, for they ensure that the government, once timely notified, will be able to move quickly to check the spread of a hazardous release. *See* 1 Senate Comm. on Environment and Public Works, 97th Cong., 2d Sess., *A Legislative History of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (Superfund), Public Law 96–510,* at 62 (Comm. Print 1983) [hereinafter *CERCLA Legislative History*] (June 20, 1979 testimony of Thomas C. Jorling, EPA Asst. Administrator); S.Rep. No. 848, 96th Cong., 2d Sess. 22 (1980), *reprinted in* 1 *CERCLA Legislative History, supra,* at 308, 329. The broad reporting requirements of section 103—which extend to anyone "in charge" of a facility—were part of the House and Senate bills from their inception, *see* H.R. 85, 96th Cong., 1st Sess. § 106 (1979), *reprinted in* 2 *CERCLA Legislative History, supra,* at 474, 499; S. 1480, 96th Cong., 1st Sess. § 3 (1979), *reprinted in* 1 *CERCLA Legislative History, supra,* at 155, 163–64, and were carried through, substantially intact, into the version of the bill finally passed into law, *see* CERCLA, Pub.L. No. 96–510, § 103, 94 Stat. 2767, 2772–73.

---

1. The penalties provisions of section 103 relevant herein, 42 U.S.C. § 9603(b)(3) (Supp. IV 1986), reads, in pertinent part, as follows:

   Any person—
   
            \* \* \*
   
      (3) in charge of a facility from which a hazardous substance is released, other than a federally permitted release,
   
   in a quantity equal to or greater than that determined pursuant to [42 U.S.C. § 9602] who fails to notify immediately the appropriate agency of the United States Government

as soon as he has knowledge of such release ... shall, upon conviction, be fined in accordance with the applicable provisions of title 18 or imprisoned for not more than 3 years (or not more than 5 years in the case of a second or subsequent conviction), or both. Notification received pursuant to this subsection or information obtained by the exploitation of such notification shall not be used against any such person in any criminal case, except a prosecution for perjury or for giving a false statement.

The legislative history of CERCLA makes clear that Congress modeled the reporting requirements of section 103 on section 311 of the Clean Water Act, 33 U.S.C. § 1321(b)(5). *See, e.g.,* 1 *CERCLA Legislative History, supra,* at 62. Like CERCLA's section 103, the reporting requirements of section 311 of the Clean Water Act require any person "in charge" of a facility to report a release of hazardous substances. Senator Jennings Randolph, one of the original sponsors of the Senate version of CERCLA, outlined the reasons for adopting the reporting requirements from section 311 of the Clean Water Act into CERCLA:

Section 103 of [CERCLA] establishes the circumstances when notice must be given to the Government of a release of hazardous substances, including hazardous wastes. Notice of a release is the essential first step which enables the Government to respond quickly to the more significant releases, if the parties responsible fail to. The 8 years of experience with the spill response program established by section 311 of the Clean Water Act amply demonstrate the necessity of immediate notice if an emergency response program is to be effective in protecting public health, welfare, and the environment. The Government response program that would be established by this bill is modeled upon the experience with the Clean Water Act's spill response program.

126 Cong.Rec. 30,933 (1980), *reprinted in* 1 *CERCLA Legislative History, supra,* at 688. Section 103 was intended, then, to "build[ ] upon and carr[y] forward the preventive orientation of section 311 of the Clean Water Act." S.Rep. No. 848, at 50.

Since CERCLA's use of the term "in charge" was borrowed from section 311 of the Clean Water Act, and the two sections share the same purpose, the parallel provisions can, as a matter of general statutory construction, be interpreted to be *in pari materia. See* N. Singer, *Sutherland Statutory Construction* §§ 51.01–51.03 (4th ed. 1984). Any doubt in this regard was removed by a prepared colloquy between Senator Randolph and Senator Howard Cannon:

MR. CANNON: [CERCLA's section 103(a)(1)] requires that the notification be made by "any person in charge." It is my understanding that the term means any responsible person and will be construed in accordance with the designations presently made under the national contingency plan [*i.e.,* section 311 of the Clean Water Act].[2] Is my understanding of this section correct?

MR. RANDOLPH: Yes, it is.

123 Cong.Rec. 30,984 (1980), *reprinted in* 1 *CERCLA Legislative History, supra,* at 763.

Like CERCLA, however, neither the Clean Water Act nor its implementing regulations contain a definition of the term "in charge." *See* Annotation, *Construction and Application of Provision of Federal Water Pollution Control Act (33 U.S.C.S. § 1321(b)(5) and Similar Predecessor, Formerly Designated as 33 U.S.C.S. § 1161(b)(4)) Requiring Person in Charge of Vessel, or Onshore or Offshore Facility, to Notify Federal Agency of Prohibited Discharge from Such Vessel or Facility,* 17 A.L.R.Fed. 804, 809 (1973); 33 C.F.R. § 153 (1988) (Coast Guard regulations governing notice under § 311). In weighing appellant's claim regarding the term "in charge" in section 103 of CERCLA, we are able to borrow from the other constructions that have evolved concerning that term under section 311 of the Clean Water Act.

---

**2.** The "national contingency plan," known formally as the National Oil and Hazardous Substances Pollution Contingency Plan, was originally developed pursuant to section 311 of the Clean Water Act. *See* 40 C.F.R. § 1510.2 (1980). The Plan was amended in the wake of CERCLA, and presently appears at 40 C.F.R. § 300 (1988). At the time of the passage of CERCLA, the Plan did not define the term "person in charge,"

though it did make reference to the duties of persons "responsible" for a discharge. 40 C.F.R. § 1510.21 (1980). The present version of the Plan also does not define the term "in charge." Instead, the Plan only notes that a "release [of hazardous substances] may be discovered through ... [n]otification in accordance with sections 103(a) or (c) of CERCLA." 40 C.F.R. § 300.63(a)(1) (1988).

The legislative history of section 311 bears out appellant's argument that CERCLA's reporting requirements should not be extended to *all* employees involved in a release.[3] "The term 'person in charge' [was] deliberately designed to cover only supervisory personnel who have the responsibility for the particular vessel or facility and not to include other employees." H.R.Conf.Rep. No. 940, 91st Cong., 2d Sess. 34 (1970), *reprinted in* 1970 U.S.Code Cong. & Admin.News 2691, 2712, 2719. Indeed, as the Fifth Circuit has stated, "to the extent that legislative history does shed light on the meaning of 'persons in charge,' it suggests at the very most that Congress intended the provisions of [section 311] to extend, not to every person who might have knowledge of [a release] (mere employees, for example), but only to persons who occupy positions of responsibility and power." *United States v. Mobil Oil Corp.*, 464 F.2d 1124, 1128 (5th Cir.1972).

That is not to say, however, that section 311 of the Clean Water Act—and section 103 of CERCLA—do not reach lower-level supervisory employees. The reporting requirements of the two statutes do not apply only to owners and operators, *see United States v. Greer*, 850 F.2d 1447, 1453 (11th Cir.1988), but instead extend to any person who is "responsible for the operation" of a facility from which there is a release, *Apex Oil Co. v. United States*, 530 F.2d 1291, 1294 (8th Cir.), *cert. denied*, 429 U.S. 827, 97 S.Ct. 84, 50 L.Ed.2d 90 (1976). As the Fifth Circuit noted in *Mobil Oil*, imposing liability on those "responsible" for a facility is fully consistent with Congress' purpose in enacting the reporting requirements. Those in charge of an offending facility can make timely discovery of a release, direct the activities that result

in the pollution, and have the capacity to prevent and abate the environmental damage. *See Mobil Oil*, 464 F.2d at 1127.

Appellant's claim that he does not come within the reporting requirements of section 103 fails because we believe Congress intended the reporting requirements of CERCLA's section 103 to reach a person—even if of relatively low rank—who, because he was in charge of a facility, was in a position to detect, prevent, and abate a release of hazardous substances. Appellant's more restrictive interpretation of the statute would only "frustrate congressional purpose by exempting from the operation of the [statute] a large class of persons who are uniquely qualified to assume the burden imposed by it." *Mobil Oil*, 464 F.2d at 1127.

## II. *The Breadth of the Instruction Given*

Appellant's second claim focuses more closely on the specific instruction given by the district court. The district court instructed the jury that "[i]f you find that [Carr] had any authority over either the vehicle or the area, this is sufficient [to convict], regardless of whether others also exercised control." Appellant contends that the district court, by instructing the jury that it had only to find that appellant exercised "any authority" over the facility at issue, effectively broadened the statute to reach any employee working at the facility. As appellant points out, the district court itself acknowledged at a post-trial hearing that the use of the word "any" in the instruction was, in retrospect, a less than ideal choice of language.

■ This court's review of a jury instruction challenged on appeal generally proceeds in two stages. *California v.*

---

**3.** The legislative history discussed in the text relates to a predecessor statute to section 311. Section 311 of the Clean Water Act was originally part of the Water Quality Improvement Act of 1970, Pub.L. No. 91–224, 84 Stat. 91. The 1970 act *added the provision in question,* section 11(b)(4), to the Federal Water Pollution Control Act, ch. 758, 62 Stat. 1155 (1948) (as amended). In 1972, further amendments caused what had been section 11(b)(4) to become section 311 of the Federal Water Pollution Control Act. *See*

Annotation, *supra*, 17 A.L.R.Fed. at 805–06. The 1972 amendments did not change the section in any relevant respect. *See United States v. Le Beouf Bros. Towing Co.*, 537 F.2d 149, 150 nn. 2 & 4 (5th Cir.1976), *cert. denied*, 430 U.S. 987, 97 S.Ct. 1688, 52 L.Ed.2d 383 (1977). As a result of a 1977 amendment, the provision is now referred to as section 311 of the Clean Water Act of 1977. *See* 33 U.S.C. § 1251 note (1982).

*Brown,* 479 U.S. 538, 541, 107 S.Ct. 837, 839, 93 L.Ed.2d 934 (1987). First, we must focus on the specific language challenged, to determine whether it passes muster. *Id.* As the district court itself acknowledged, the language at issue likely fails this first prong. Next, we must "review the instructions as a whole to see if the entire charge delivered a correct interpretation of the law." *Id.* (citing *Francis v. Franklin,* 471 U.S. 307, 315, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985)). The charge must be "viewed in its entirety and not on the basis of excerpts taken out of context, which might separately be open to serious question." *United States v. Clark,* 765 F.2d 297, 303 (2d Cir.1985). Considering the charge as a whole, we must attempt to discern what point of law the district court was, in fact, seeking to convey to the jury. *See United States v. Toner,* 728 F.2d 115, 124 (2d Cir.1984).

█ A careful review of the challenged instruction indicates that the district court sought, through the charge, to explain two important principles to the jury: (1) that the appellant must have exercised supervisory control over the facility in order to be held criminally liable for his failure to report the release, but (2) that the appellant need not have exercised *sole* control over the facility. By taking the language of the instruction out of context—by focusing too narrowly on the district court's use of the word "any"—appellant ignores the broader point that the district court was attempting to make to the jury. The court had already explained that the appellant must have had "supervisory control" over the facility in order to be found guilty. The subsequent, challenged portion of the instruction was therefore not directed at the breadth of authority that appellant must have had, but instead was intended to make clear that the appellant need not have been the sole person in charge of the facility. Viewing the challenged language within the context of the charge as a whole rather than in "artificial isolation," *see Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973), we hold that the instruction, though not ideal, was not erroneous.

█

## CONCLUSION

We have reviewed all of appellant's other arguments on appeal, and consider them to be without merit. The judgment of the district court is, therefore, affirmed.