UNITED STATES of America, Appellee,

v.

**Syed Shafi IMRAN, Defendant–Appellant.**

**No. 1185, Docket 91–1667.**

United States Court of Appeals, Second Circuit.

Argued April 2, 1992.

Decided May 28, 1992.

Lawrence W. Schoenbach, New York City, for defendant-appellant.

Brian T. Moriarty, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., of counsel), for appellee.

Before MINER and McLAUGHLIN, Circuit Judges, and MARTIN, District Judge.[*]

McLAUGHLIN, Circuit Judge:

Defendant ("Imran") appeals from a judgment of the United States District Court for the Eastern District of New York (I. Leo Glasser, *Judge*), convicting him, after a jury trial, of one count of importation of heroin, in violation of 21 U.S.C. §§ 952, 960, and one count of possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841. On appeal, Imran challenges (1) the district court's exclusion of a defense expert's testimony on Pakistani mores, and (2) the court's charge to the jury on Imran's right not to testify at trial. Imran also appeals from the district court's denial of his motion for a new trial. We find that the district court did not commit reversible error on any of these grounds, and therefore affirm.

## BACKGROUND

On December 26, 1990, Imran arrived at New York's John F. Kennedy International Airport on a flight from Karachi, Pakistan. Carrying a black leather bag and a hard suitcase, Imran presented himself to Customs Inspector Alfredo Rebote. Rebote asked Imran the usual perfunctory questions, and then proceeded to examine the black leather bag. He opened the bag, and saw several articles of clothing draped over a Persian rug. The rug appeared to be tightly packed into the bottom of the bag. Rebote reached underneath the rug, and discovered that the bag contained a false bottom that formed a hidden compartment.

Rebote escorted Imran to a private room to conduct a more extensive search of the bag. Once inside the room, Rebote reached into the hidden compartment, and discovered a plastic pouch containing one kilogram of a white powdery substance later identified as heroin. Rebote then arrested Imran, and handcuffed him.

Rebote left the room, and delegated Inspector Michael Ginsberg to guard Imran. After a short time, Imran asked Ginsberg to remove his handcuffs, and Ginsberg complied. Imran repaid Ginsberg's compassion by punching him in the face and attempting to escape. After a protracted struggle, four customs inspectors brought Imran under control.

After his recapture, Imran spoke with Customs Agent Michael Karcher. Imran told Karcher that a Pakistani acquaintance named Mohammed Ali Reza had given him the bag in Karachi, and had asked him to deliver it to a person at the airport. Curiously, Imran did not know this person's name or even his appearance.

Imran was indicted in the United States District Court for the Eastern District of New York, on one count of importation of heroin, and one count of possession of heroin with intent to distribute. The case proceeded to a jury trial before Judge Glasser. After substantial deliberations, the jury reported that it was "hopelessly deadlocked." Judge Glasser then declared a mistrial.

The government retried Imran on both counts. The second trial, over which Judge Glasser also presided, began on July 15, 1991 and continued until July 17, 1991.

[*] Honorable John S. Martin of the United States District Court for the Southern District of New York, sitting by designation.

Each of the Customs officials involved in Imran's arrest testified at this second trial.

Imran presented six witnesses in his defense. Of particular significance to this appeal is the testimony of Imran's brother, Syed Rehan. Rehan testified that, while in Karachi, Imran and Rehan met a childhood friend named Amjed Ali, and another man named Mohammed Ali Reza, whom neither Imran nor Rehan had previously met. This meeting occurred in their parents' home. In the course of their conversation, Reza announced that he planned to start a carpet business in New York.

A week later, Reza returned, unaccompanied, to the home of defendant's parents. He met with Imran and Rehan, and, according to Rehan's testimony, asked Imran to deliver a bag with some rug samples to a potential business associate in New York City. Imran agreed to do so, and accepted the bag that was later discovered to contain heroin. Before leaving Pakistan, Imran repacked the bag to make it easier to carry, but according to Rehan, Imran never knew that the bag contained heroin.

Imran also attempted to call Dr. Anne Sweetzer as an expert witness. He proffered that Sweetzer would testify that pursuant to Pakistani tradition, a person who is asked by a friend to transport an item for a third person will do so unquestioningly. Imran claimed that Sweetzer's testimony would support his argument that it was not unreasonable for him to agree to deliver the black bag for Reza without knowing all of the bag's contents. Judge Glasser excluded Sweetzer's testimony, ruling that the relevance of the testimony was "terribly outweighed" by the factors enumerated in Fed.R.Evid. 403.

On July 17, 1991, the jury returned a guilty verdict on both counts. Two weeks later, Imran's attorney petitioned the district court for authorization to travel to Pakistan to interview the childhood friend, Amjed Ali, who attended the first meeting at the home of defendant's parents. Counsel claimed that Ali would "categorically exonerate" Imran. The district court granted this request.

On September 4, 1991, Imran's attorney and Assistant United States Attorney Leslie Caldwell conducted a videotaped interview of Ali in a Karachi hotel room. Ali, defense counsel and Caldwell were the only people present during the interview. The attorneys asked Ali to elaborate on the relationship between Reza and Imran. Ali responded that he had met with these two men only once. He also stated that he had not asked Imran to tote the black bag to New York, and that he was not present when Reza asked Imran to deliver the bag to Reza's business associate.

On October 25, 1991, Imran moved for a new trial pursuant to Fed.R.Crim.P. 33. In support of the motion, he attached an affidavit from Ali, in which Ali alleged that Reza admitted to Ali that he "set up" Imran by putting the heroin into the black bag. Ali further professed that he had not mentioned this startling information during the Karachi interview because Reza had threatened to kill Ali if he implicated him.

Characterizing Ali's affidavit as a "tissue of lies," Judge Glasser denied Imran's motion. Imran now appeals the judgment of conviction, as well as the denial of his motion for a new trial.

## DISCUSSION

### I. *The Expert Testimony*

■ The district court relied on Fed. R.Evid. 403 to exclude Dr. Sweetzer's proffered expert testimony on Pakistani cultural mores. This rule allows a court to exclude otherwise relevant evidence if:

> [the] probative value [of the evidence] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*Id.* Because the district court is in the best position to balance the value of proferred testimony against the myriad factors of Fed.R.Evid. 403 militating against admission, we will not overturn a Rule 403 determination unless there is a "clear showing" that the district court abused its discretion.

*See, e.g., United States v. Simmons,* 923 F.2d 934, 948 (2d Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 2018, 114 L.Ed.2d 104 (1991). There is no such showing here.

Dr. Sweetzer would have testified that Pakistani custom obligates a person to perform a favor for a stranger when asked to do so by a friend. Arguably, this testimony might have been useful if *Ali,* who was one of Imran's close friends, had sought Imran's assistance. But it was Reza, whom Imran had not previously met, who made the request. Thus, even without a Rule 403 balancing, the testimony is irrelevant under Rule 401; and even if it were relevant, the district court exercised sound discretion in excluding it under Rule 403.

## II. *The Jury Charge*

██ Imran asked the district court to instruct the jury that he had the right not to testify at trial, and that no adverse inference could be drawn from his failure to testify. He suggested that the district court give the charge entitled "Improper Consideration of Defendant's Right Not to Testify" found in 1 Leonard B. Sand *et al.,* Modern Federal Jury Instructions: Criminal ¶ 5.07 at 5–50 (1991):

> The defendant did not testify in this case. Under our constitution, he has no obligation to testify or to present any other evidence because it is the prosecution's burden to prove the defendant guilty beyond a reasonable doubt. That burden remains with the prosecution throughout the entire trial and never shifts to the defendant. The defendant is never required to prove that he is innocent.
>
> You may not attach any significance to the fact that the defendant did not testify. No adverse inference against him may be drawn by you because he did not take the witness stand. You may not consider this against the defendant in any way in your deliberations in the jury room.

This language was similar to the charge given by the district court in Imran's first trial:

> [T]he defendant is not obligated to offer any evidence, is not obligated to testify on his own behalf. You cannot draw any adverse inference, that is, any inference of guilt from the fact that the defendant chose to exercise his constitutional right to remain silent. No adverse inference can be drawn against the defendant because he elected not to take the stand and you must not consider that against a defendant in any way in the course of your deliberations.

The district court chose to use different language at the second trial:

> The defendant is presumed to be innocent of the charges which have been brought against him. He is under no obligation to prove his innocence. He is under no obligation to prove anything. He is under no obligation to offer evidence. And no adverse inference must be drawn from the fact that the defendant stood upon his constitutional right to remain silent. The fact that he chose to remain silent should not enter into your deliberation in any way.

Imran claims that this language did not adequately convey the full scope of his right not to testify at trial. We disagree.

██ A criminal defendant does not have the right to dictate the precise language of a jury instruction. *See United States v. Dyman,* 739 F.2d 762, 771 (2d Cir.1984), *cert. denied,* 469 U.S. 1193, 105 S.Ct. 969, 83 L.Ed.2d 973 (1985). He is, however, entitled to a jury charge that accurately reflects the applicable law.

██ Our review of a jury charge proceeds in two stages. First, we examine the "specific language challenged to determine whether it passes [constitutional] muster." *United States v. Carr,* 880 F.2d 1550, 1555 (2d Cir.1989) (citing *California v. Brown,* 479 U.S. 538, 541, 107 S.Ct. 837, 839, 93 L.Ed.2d 934 (1987)). If the language is deficient, we "review the instructions as a whole to see if the entire charge delivered a correct interpretation of the law." *Brown,* 479 U.S. at 541, 107 S.Ct. at 839.

■ The Fifth Amendment grants a criminal defendant the right not to testify at trial. *Carter v. Kentucky*, 450 U.S. 288, 305, 101 S.Ct. 1112, 1121, 67 L.Ed.2d 241 (1981). The amendment also precludes a jury from drawing an adverse inference from the defendant's exercise of this right. *Id.*

The jury instruction challenged here accurately reflects these precepts. First, the charge informed the jury that Imran had no obligation to "offer evidence" at trial. The word "evidence" encompasses *anything* that might support Imran's defense, and certainly includes his own testimony.

Second, the charge cautioned the jurors against speculating about why Imran chose not to testify: "And no adverse inference may be drawn from the fact that the defendant stood upon his constitutional rights to remain silent. The fact that he chose to remain silent should not enter into your deliberation in any way." This language undoubtedly conveyed the Fifth Amendment's guarantee that a jury not take into account a defendant's failure to testify. Accordingly, we hold that the challenged language adequately conforms to the Fifth Amendment, and thereby satisfies the *Carr* test.

Although we hold that the district court's charge harmonizes with the Fifth Amendment, we note that the harmony would have been more mellifluous had the district court explicitly stated that Imran had the right not *to testify*. Indeed, we find the district court's charge particularly curious because at Imran's first trial, the court did expressly state that Imran was "not obligated to testify on his own behalf." Nevertheless, the existence of a "better" instruction does not render the given charge constitutionally infirm. Because the district court's charge adequately captured both Imran's right not to testify and the jury's obligation not to draw any adverse inference therefrom, the charge was not erroneous.

### III. *The Motion for a New Trial*

■ Imran moved for a new trial on the ground of newly discovered evidence. *See*

Fed.R.Crim.P. 33. In support of his motion, he relied on the statement in Ali's affidavit that Reza had admitted to Ali that he had "set up" Imran. The district court denied the motion. Imran now asks us to reverse the district court's decision. We find his protestations unpersuasive.

■ A district court must exercise "great caution" in determining whether to grant a retrial on the ground of newly discovered evidence, and may grant the motion only *"in the most extraordinary circumstances."* United States v. DiPaolo, 835 F.2d 46, 49 (2d Cir.1987) (citations omitted). Among other things, the defendant must show that the new evidence "would probably lead to an acquittal." *United States v. Gilbert*, 668 F.2d 94, 96 (2d Cir.1981), *cert. denied*, 456 U.S. 946, 102 S.Ct. 2014, 72 L.Ed.2d 469 (1982). We will not disturb the district court's findings of fact in conjunction with a Rule 33 motion unless the findings are clearly erroneous. *United States v. Diaz*, 922 F.2d 998, 1006 (2d Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2035, 114 L.Ed.2d 119 (1991). Moreover, we will not reverse the decision to deny the motion unless we conclude that the district court abused its discretion. *Id.* at 1007; *see also United States v. Parker*, 903 F.2d 91, 103 (2d Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990).

Before submitting the crucial affidavit, Ali never mentioned his conversation with Reza. To explain this suspicious silence, Ali claimed that he was afraid to mention it during his videotaped interview in Karachi because Reza had threatened to kill him if he cooperated with American authorities. The government points out that Imran's attorney and Assistant U.S. Attorney Caldwell were the only other people present during the Karachi interview. Neither attorney would have had any reason to divulge Ali's implication of Reza. Of course, Imran would have attempted to introduce evidence of the conversation if the district court had granted him a new trial. However, Ali did not offer a plausible explanation for why he no longer feared Reza's wrath if Reza discovered his betrayal. Ac-

cordingly, the district court's finding that Ali's affidavit was a "tissue of lies" was not clearly erroneous. Because this dubious affidavit formed the basis of Imran's new trial motion, the district court appropriately exercised its discretion in denying the motion. *See United States v. Rivalta,* 892 F.2d 223, 228 (2d Cir.1989) ("highly suspect nature" of new evidence justified district court's denial of defendant's motion for a new trial).

## CONCLUSION

The district court did not err in excluding Imran's profferred expert testimony on Pakistani social mores. Moreover, the district court's charge to the jury adequately reflected the principles of the Fifth Amendment. Finally, the district court did not abuse its discretion in denying Imran's motion for a new trial.

AFFIRMED.