**Joseph C. TESTA, Jr. and Anthony Senter, Petitioners,**

v.

**UNITED STATES of America, Respondent.**

**No. 90 Civ. 6003 (JSR).
No. 3S 84 Cr. 63 (VLB).**

United States District Court,
S.D. New York.

Aug. 8, 1997.

Herald Price Fahringer, Erica T. Dubno, Benjamin Brafman, New York City, for petitioners.

Mary Jo White, Joseph F. Bianco, New York City, for respondent.

## OPINION AND ORDER

RAKOFF, District Judge.

An argument built on a lie is a showroom convertible: it looks great, but it doesn't take you anywhere. Here, petitioners' well-fashioned legal argument is of no avail, since it is premised on testimony that the Court finds unworthy of belief.

By way of background, petitioners Testa and Senter were convicted on June 28, 1989, along with others, of violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) and (d), involving predicate acts of murder, kidnapping, and extortion. Testimony elicited at the sixteen-month trial evidenced petitioners' membership in the "DeMeo crew," a part of the Gambino Organized Crime Family, which engaged in a wide range of illegal and violent activities. The jury specifically found that petitioners were involved in at least seven murders. On September 14, 1989, the Honorable Vincent L. Broderick sentenced petitioners to life imprisonment and $35,000 in fines. The judgments were subsequently af-

firmed by the Second Circuit. *See United States v. DiNome,* 954 F.2d 839, 846 (2d Cir.), *cert. denied,* 506 U.S. 830, 113 S.Ct. 94, 95, 121 L.Ed.2d 56 (1992).

Some months following sentence, on May 15, 1990, James Cardinale, a former cooperating Government witness who did not testify at petitioners' trial, appeared on the television program "Larry King Live." In the course of his appearance, Cardinale alleged in effect that he had been induced by Government agents in the Southern District of New York to "coach" a Government witness, Mickey Featherstone, to make a false identification of petitioners at their trial. Shortly thereafter, in July, 1990, another Government witness at petitioners' trial, Joseph Bennett, Jr., telephoned counsel for petitioner Testa. In the call, and in a subsequent interview conducted by Testa's investigator, Bennett claimed, *inter alia,* that he had been induced by the Government to falsely implicate Testa in one of the murders that the jury found as a predicate act.

Based on these and other statements by Cardinale and Bennett, the petitioners filed the instant petition on September 7, 1990, seeking relief under 28 U.S.C. § 2255. For reasons unworthy to detail, the petition lay dormant, on consent of both sides, until the case was reassigned on February 29, 1996 to this Court, which, after receiving briefing and oral argument, ordered an evidentiary hearing. Despite some difficulties in locating Messrs. Bennett and Cardinale, they were eventually found, and testified before the Court on November 14, 1996 and February 4, 1997, respectively. Following the submission of further legal briefs from all parties, the Court heard oral argument on the petition on May 29, 1997. The matter is thus finally ripe for ruling by this Court.

▆ In approaching the issue, the Court is mindful that "[a] district court must exercise 'great caution' in determining whether to grant a retrial on the ground of newly discovered evidence, and may grant the motion [only] 'in the most extraordinary circumstances.'" *United States v. Imran,* 964 F.2d 1313, 1318 (2d Cir.), *cert. denied,* 506 U.S. 1009, 113 S.Ct. 626, 121 L.Ed.2d 558 (1992) (quoting *United States*

*v. DiPaolo,* 835 F.2d 46, 49 (2d Cir.1987) (emphasis in original)). Ordinarily, petitioners must show that "there is a reasonable probability that, had the evidence [allegedly suppressed by the Government] been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley,* 514 U.S. 419, 433, 115 S.Ct. 1555, 1565, 131 L.Ed.2d 490 (1995). Here, the evidence allegedly suppressed is nothing short of putative subornation of perjury by the Government, which, presumably, would impact jurors' deliberations in a highly material way in most cases. *See United States v. Wallach,* 935 F.2d 445, 456 (2d Cir.1991); *but cf. Sanders v. Sullivan,* 863 F.2d 218, 226 (2d Cir.1988). The Court finds it unnecessary to determine whether this is such a case, however, or even whether in such putative circumstances a retrial might be granted under some lesser standard, because petitioners have failed to adduce any credible evidence of any subornation or suppression by anyone, or, indeed, any credible new evidence whatever.

In this regard, it should be noted that the Court sits as the finder of fact for the purpose of determining whether a new trial should be granted. *See* 28 U.S.C. § 2255. Making such a determination with respect to the instant petition requires the Court to determine the credibility of the testimony given by the two witnesses called by petitioners, Joseph Bennett and James Cardinale. On November 14, 1996, Bennett testified before the Court for about two hours. However, contrary to what he had told Testa's counsel and investigator in 1990, *see* Affirmation of Herald Price Fahringer, September 7, 1990, at ¶¶ 8–14, Bennett in his testimony here fully confirmed the accuracy and truthfulness of his trial testimony and completely disavowed his prior allegations of Government misconduct.

Specifically, Bennett testified that 1) he did not commit perjury at petitioners' trial when he placed himself and petitioner Testa at the murder scene or otherwise implicated Testa in murder, *see* Transcript, November 14, 1996 ("Tr. I") at 30–32; 2) prior to Testa's trial, no Government agent ever showed Bennett a photo of petitioner Testa, told him to implicate Testa in a murder, or otherwise enticed him to lie, *see* Tr. I at 37; 3) Bennett was given $2,500 by the Government, but not in exchange for false testimony at petitioners' trial (as he had told Testa's investigator), *see* Tr. I at 59–60; 4) Bennett had lied to the petitioners' investigator when he alleged that many Government witnesses at petitioners' trial had failed lie detector tests, *see* Tr. I at 40; and 5) contrary to what he had told Testa's investigator, Bennett never reviewed any files left by prosecutors in rooms where he was being briefed, *see* Tr. I at 79.

Bennett further explained his prior statements to Testa's counsel and investigator by stating that while he was incarcerated with James Cardinale at La Tuna Federal Penitentiary in 1990, Cardinale had suggested that Bennett make these false allegations, *see* Tr. I at 78–79, and that Bennett had gone along because the Government had not done enough to help him get out of prison. Feeling wronged at the time, he sought, in his words, "to smack the government in the face" and "to embarrass the government," Tr. I at 9, 17. In short, Bennett reaffirmed his trial testimony and explained his previous allegations of perjurious testimony and prosecutorial misconduct as concoctions.

The Court credits Bennett's testimony at the hearing. It does so partly based on its observations of his demeanor, partly based on its comparison of his testimony with that of James Cardinale (discussed below), and partly because, upon a careful review of the entire record, it makes sense. While petitioners make much of the fact that Bennett did not deny many of the incidental facts contained in the statements he previously made to Testa's investigator, these admitted facts were neither negative to the Government nor material to the issue at hand. If, as Bennett alleges, he had been trying in July, 1990 to "smack the Government" by giving Testa's counsel ammunition to use against the Government (thus requiring the Government, Bennett believed, to come to terms with him), it was natural that he would have blended some immaterial truthful statements with his extortionist lies, so as to give some semblance of verisimilitude to his ac-

**836**

count. While other inferences are possible, Bennett's credible demeanor during his testimony before this Court, in stark contrast with that of Cardinale (described below), leaves this Court in no doubt as to the truth of Bennett's recantation of his prior statement to Testa's counsel and investigator.[1]

James Cardinale testified before the Court on February 4, 1997. His testimony related, not to Bennett, but to another witness at petitioners' trial, Mickey Featherstone. Specifically, Cardinale testified that in 1988, while both he and Featherstone were incarcerated in the Metropolitan Correctional Center ("MCC") in Manhattan, he was instructed by a Government agent, Benjamin Saurino, to help Featherstone, who allegedly did not know petitioners, to falsely identify them at trial and implicate them in murder. To accomplish this Cardinale allegedly stood with Featherstone at a window in the MCC and identified petitioners as they walked to their car outside the Courthouse during their trial. *See* Transcript, February 4, 1997 ("Tr. II") at 103–05.

The more particular details of Cardinale's account render it dubious on its face. According to Cardinale, Featherstone, in the MCC, was having a telephone conversation with someone then unknown to Cardinale (later alleged to be Saurino), when Featherstone motioned to Cardinale to approach. He handed Cardinale the phone, whereupon the unnamed, unknown person on the other end asked Cardinale "What is going on?" Cardinale claims he immediately responded that "What is going on is that Mickey cannot pick out Anthony [Senter] and Joey [Testa]." Cardinale claims that the person on the phone thereupon told him "We're all team players. We have to help each other." Tr. II at 102. He states that from this "sixty-second" conversation he was "left with the impression" that he was to assist Featherstone in identifying petitioners at trial, and

that he then did so in the manner previously indicated.

Even on its face, this account is preposterous. Why would Cardinale, who admittedly did not know who Featherstone was talking to, pick up the phone and immediately volunteer the fact that Featherstone could not identify petitioners? Indeed, even if the caller had identified himself as Saurino, why would Cardinale have volunteered the topic of Featherstone's testimony to someone whom he had "never met" and had "nothing to do with" before the conversation? *See* Tr. II at 102. Why, moreover, would Saurino's telling Bennett to "be a team player" magically leave Cardinale "with the impression" that he was to suborn perjury from Featherstone? Cardinale's entire account of the incident is pregnant with absurdity. Moreover, any doubt that Cardinale was concocting a story was removed by his demeanor on the witness stand during his approximately two hours of testimony before this Court. While demeanor evidence must be scrutinized with great care, Cardinale, in both the substance and manner of his responses—illogical, shifting, glib—gave clear indications of prevarication. Even months later when the Court, in preparation for deciding this petition, once again reviewed the transcript, the memory of Cardinale's patently dubious demeanor remained depressingly vivid.

For all the foregoing reasons, the instant petition is denied. Clerk to enter judgment.

SO ORDERED.

---

**1.** The Court rejects petitioners' argument (putatively premised on *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)) that the Court should grant a new trial so that a jury can determine which of Bennett's statements—his sworn trial testimony (affirmed under oath in this Court) or his unsworn allegations to Testa's counsel and investigator—are truthful. On petitioners' novel theory, the only issue before a District Court on a § 2255 "new evidence" petition would be to assess materiality, and criminal convictions would be no more permanent than chalk on a blackboard.