10-3707-cr
United States v. Rommy

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 21st day of June, two thousand twelve.

PRESENT:
> PETER W. HALL,
> GERARD E. LYNCH,
> DENNY CHIN,
> > *Circuit Judges*.

---

United States of America,

> *Appellee*,

> v.                                    No. 10-3707-cr

Henk Rommy, AKA Cobra, AKA Charles Gordon,
AKA Henk Orlando Rommy, AKA Black Cobra,

> *Defendant-Appellant*.

---

FOR APPELLEE:             Adam Fee, Jesse M. Furman, Assistant United States Attorneys, *of counsel, for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York.

FOR APPELLANT:            Joseph Di Benedetto, Esq., Law Office of Joseph DiBenedetto, P.C., New York, New York.

1

Appeal from an order of the United States District Court for the Southern District of New York (Rakoff, *J.*). **UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **AFFIRMED**.

Defendant-Appellant Henk Rommy appeals from the denial of a motion brought pursuant to Rule 33 of the Federal Rules of Criminal Procedure by which he sought a new trial based on newly discovered evidence. A jury previously found Rommy guilty of conspiracy to import ecstasy into the United States in violation of 21 U.S.C. § 963. We affirmed Rommy's conviction on direct appeal. *See United States v. Rommy*, 506 F.3d 108 (2d Cir. 2007). Thereafter, Rommy brought the Rule 33 motion that is the subject of the instant appeal. We assume the parties' familiarity with the underlying facts and procedural history of the case.

At Rommy's trial, the prosecution presented evidence that Rommy conspired to import ecstasy into the United States through three transactions. Two of Rommy's associates in the drug trade, Thomas Bosch and Daniela Rinaldi, testified regarding the first transaction that they and others conspired with Rommy in an uncompleted plan to import 1,000,000 ecstasy pills into the United States. The second transaction, documented by several recorded telephone calls and a videotape of a meeting in Bermuda, involved discussions between Rommy, an undercover DEA agent, and a government cooperator to arrange importation of 300,000 ecstasy pills into the United States. The third transaction, described by both Bosch and Rinaldi at trial, involved an 800,000-ecstasy-pill[1] shipment that Rinaldi and Bosch successfully imported into the United

---

[1] Portions of the record refer to this shipment as containing 890,000 pills, but this figure was most frequently rounded down to 800,000 throughout the trial transcripts and appellate briefs. Here we use 800,000 for consistency.

States for a drug trafficker named Thomas Allen. While Bosch did not know the source of the drugs, Rinaldi testified that Allen informed her that Rommy owned fifty percent of the shipment.

Following his appeal, Rommy filed his Rule 33 motion for a new trial based on newly discovered evidence: statements by Allen provided in a post-trial affidavit. In the affidavit, Allen (whom the defense had been unable to locate for trial) swore that he did not know Rommy personally and that he had never told Rinaldi of Rommy's involvement in the 800,000-pill transaction. Allen also claimed to have met with DEA agents prior to Rommy's trial, at which time he specifically denied any involvement with Rommy. The district court denied the motion, stating, *inter alia*, that "even crediting the assertions in Allen's affidavit, a new trial is nonetheless unwarranted because the allegedly undisclosed information is cumulative, immaterial and otherwise extremely unlikely to have led any reasonable jury to acquit." Rommy appeals, asserting three arguments: that Allen's affidavit was newly discovered evidence that (1) supported acquittal; (2) proved perjury by at least one witness and suggested that the government consented to perjury; and (3) demonstrated a *Brady* violation.

We review a district court's denial of a Rule 33 motion for abuse of discretion, *United States v. Rigas*, 583 F.3d 108, 125 (2d Cir. 2009), and the factual findings in support of such a decision for clear error, *United States v. Imran*, 964 F.2d 1313, 1318 (2d Cir. 1992). District courts should exercise their Rule 33 authority only "sparingly" and in "the most extraordinary circumstances." *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992). We afford particular deference to the trial court because "its vantage point as to the determinative factor—whether newly discovered evidence would have influenced the jury—has been informed by the trial over which it presided." *United States v. Stewart*, 433 F.3d 273, 296 (2d Cir. 2006).

3

As for Rommy's three arguments, the standards governing each share a common denominator: in order to warrant a new trial, a defendant must show at least a reasonable likelihood that the result of the proceeding would have been different had the newly discovered evidence, proof of perjury, or *Brady* material been introduced. *See United States v. Owen*, 500 F.3d 83, 88 (2d Cir. 2007) (requiring, *inter alia*, that newly discovered evidence "would likely result in an acquittal"); *United States v. Wallach*, 935 F.2d 445, 456 (2d Cir. 1991) (where prosecution had knowledge of perjury, "the conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury" and where the government lacked such knowledge, requiring a new trial "only if the testimony was material and the court is left with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted" (internal quotation marks and alterations omitted)); *United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001) (requiring the defendant to show, *inter alia*, that the government's failure to disclose *Brady* evidence resulted in prejudice). Even assuming that Allen would be available to testify to the contents of his affidavit or that its contents would otherwise be admissible at trial, Rommy has failed to make such a showing.

First, as to the impact of Allen's affidavit with respect to Rinaldi's testimony that Rommy owned half of the 800,000-pill shipment, we note that defense counsel impeached Rinaldi on this very issue at trial. During Rommy's counsel's cross examination of Rinadli and during his closing, Rommy's counsel emphasized that at no time during any of Rinaldi's pre-trial interviews with law enforcement officials did Rinaldi ever claim that Rommy was involved in the 800,000-pill shipment. In particular, Rommy's counsel drew attention to one interview during which Rinaldi told officials that she did not know whether Rommy was involved in the shipment. Thus Allen's statement (set out in the affidavit) that he never told Rinaldi of

4

Rommy's involvement in the 800,000-pill transaction would have been cumulative impeachment material and is therefore an inadequate basis for granting a Rule 33 motion. *See, e.g.*, *United States v. Payne*, 63 F.3d 1200, 1210 (2d Cir. 1995) (stating that new impeachment evidence is not material when it "merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable").

Second, assuming, *arguendo*, that the evidence embodied in Allen's affidavit might have led the jury to doubt whether Rommy owned 400,000 of the 800,000 pills that Bosch and Rinaldi imported for Allen, it does nothing to counter the overwhelming evidence constituting proof of the 1,000,000-pill deal or the 300,000-pill Bermuda deal. Bosch and Rinaldi both testified in a manner substantially consistent with each other that they, Rommy, and others conspired to import 1,000,000 ecstasy pills into the United States. Their accounts remained unaffected by the statements in Allen's affidavit, as Allen was never alleged to have been involved in the 1,000,000-pill deal. Moreover, independent evidence (the testimony of a Dutch law enforcement official and Rommy's own post-arrest statement[2] confirmed that Rommy was closely associated with Bosch, Rinaldi, and others whom Bosch and Rinaldi had testified were involved in the 1,000,000-pill deal. On appeal, Rommy reiterates his skepticism about the truthfulness of Bosch's and Rinaldi's testimony, but "the credibility of witnesses is the province of the jury." *United States v. James*, 239 F.3d 120, 124 (2d Cir. 2000) (internal quotation marks omitted). Rommy's attorney attacked both Bosch's and Rinaldi's credibility at trial. To the extent that Rommy asserts that Allen's affidavit bears on their credibility in the testimony relating to the

---

[2] At a post-arrest meeting with a DEA agent, while in Spain awaiting extradition, Rommy attempted to secure leniency by asserting that he could provide information on various drug traffickers including Bosch, Rinaldi, and Allen.

5

1,000,000-pill deal, it "merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable," *United States v. Persico*, 645 F.3d 85, 111 (2d Cir. 2011); *see also United States v. Diaz*, 922 F.2d 998, 1007 (2d Cir. 1990) (no new trial warranted where newly discovered impeachment evidence was essentially cumulative). Rommy tries to dismiss the 1,000,000-pill deal in part by noting that no pills ever reached America. This argument is unavailing because a conspiracy to import a controlled substance is "complete upon the agreement to violate the law, . . . and is not at all dependent upon the ultimate success or failure of the planned scheme." *United States v. Trapilo*, 130 F.3d 547, 553 n.9 (2d Cir. 1997) (internal quotation marks omitted).

In addition to the evidence supporting the 1,000,000-pill deal, the jury also heard evidence of five phone conversations and a videotaped meeting in Bermuda that showed Rommy actively and explicitly negotiating a shipment of 300,000 ecstasy pills into the United States and mentioning contacts both on the supply and the distribution end of the chain. The overwhelming evidence supporting the 1,000,000-pill deal and the Bermuda deal provided a more than sufficient basis for reaching the conclusion that Rommy conspired to transport ecstasy into the United States in violation of federal law.

In light of the foregoing, the district court did not "base[] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[] a decision that cannot be located within the range of permissible decisions." *Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) (internal citations and quotation marks omitted). Because Rommy fails to show the prejudice required to vacate his conviction, we agree with the well-reasoned decision of the district court, and we conclude that the district court did not exceed the bounds of its discretion when it determined that Rommy is not entitled to a new trial.

6

We have considered Rommy's remaining arguments and find them to be without merit.

The judgment of the district court is **AFFIRMED**.


FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk